Filed 8/19/14  P. v. Gueyger CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072520 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00852) |
| v. | |
| CARLOS GUEYGER, | |
| Defendant and Appellant. | |

After defendant Carlos Gueyger stabbed David Ellis in the neck with a knife, a jury convicted him of assault with a deadly weapon with a finding of great bodily injury (Pen. Code, §§ 245, subd. (a)(1), 12022.7 subd. (a)–count one) and battery with serious bodily injury (Pen. Code, § 243, subd. (d)–count two).  Defendant was sentenced to state prison for seven years on count one and three years on count two, the latter term stayed pursuant to Penal Code section 654.

On appeal, defendant contends the court prejudicially erred when it (1) ordered him restrained during trial, and (2) failed to instruct the jury, sua sponte, to disregard the

1

fact he was in restraints. We conclude the contentions lack merit and therefore shall affirm the judgment.

## FACTS

David Ellis and defendant, both of whom were homeless, hung around together and drank daily. On January 13, 2012, the two had been drinking and were at a Del Taco restaurant. Defendant showed Ellis a hunting knife he carried, and, in turn, Ellis showed defendant a dagger he carried. Defendant bought Ellis's dagger for $5. Defendant set his hunting knife on the table and walked away. Ellis took the hunting knife and put it in his sock.

When defendant returned he asked Ellis if he had the hunting knife and Ellis replied that he did not. With Ellis's consent, defendant searched him and found the knife. Defendant unsheathed the knife and lunged at Ellis, calling him a thief, and stabbed him in the neck. Ellis went inside the Del Taco and called 911, and defendant left the scene. Not wanting to be labeled a "snitch," Ellis told the 911 operator he did not know who had stabbed him, but he gave the fire department personnel and police who arrived a description that matched defendant. The stabbing cut Ellis's external jugular vein, requiring surgery and three days in the hospital.

Mary Trejo and Scott Rasmussen, both of whom were homeless and had several prior convictions, saw and heard Ellis and defendant arguing over the disappearance of defendant's hunting knife. Trejo saw defendant search Ellis, remove the knife from the area of Ellis's ankle, cut Ellis on the throat, and then leave the scene. Trejo never saw Ellis make an aggressive move toward defendant. Rasmussen also saw defendant remove the knife from Ellis's shoe or boot, but he claimed he did not see defendant stab Ellis because he had turned to drink his beer.

2

# DISCUSSION

## I

Defendant contends the trial court prejudicially erred when it ordered him physically restrained during trial. We disagree.

Prior to the start of jury selection, the bailiff informed the court the reason defendant had been brought into court shackled was that during the morning pat-down defendant had said "he was going to go off on his attorney in court today," and that he had "thought about it all night and he couldn't control himself." The bailiff later spoke to defendant in the attorney visiting room and defendant again said "he was going to be violent with his attorney." The bailiff informed defendant that if that was the case, defendant would be "brought to court in waist chains and hands secured to his sides and leg restraints." Defendant responded, " 'I appreciate that. If not, there's going to be violence.' " The bailiff requested the court keep defendant shackled for the duration of the trial.

The court asked defendant's counsel if he wished to be heard and counsel requested that defendant "at least have his hands free" so he could take notes if he so chose. The court then asked defendant for his thoughts on the issue. Defendant replied that prior to a *Marsden*[1] hearing conducted "the other day," counsel had "threatened" him with losing a "two year deal or any kind of deal" if defendant said anything at the *Marsden* hearing regarding a "couple issues that we had." At this point, the court conducted an in camera hearing with defendant and his counsel.

At that hearing, defendant denied making any "threatening" statement to the bailiff regarding his counsel, but admitted saying he "felt uncomfortable with [his counsel] and to be handcuffed some problems might happen." At the conclusion of the hearing, the

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

3

court determined defendant presented a threat to the parties and ordered that he remain restrained.  However, shortly after the parties returned to court, the court ordered defendant's hands unshackled after defendant promised not do anything to counsel or anyone else in the courtroom.

"A criminal defendant cannot be physically restrained in the jury's presence unless there is a showing of manifest need for such restraints.  [Citation.]  Such a showing, which must appear as a matter of record [citation], may be satisfied by evidence, for example, that the defendant plans to engage in violent or disruptive behavior in court . . . .  A shackling decision must be based on facts, not mere rumor or innuendo." (*People v. Anderson* (2001) 25 Cal.4th 543, 595 (*Anderson*).  An appellate court "will not overturn a trial court's decision to restrain a defendant absent 'a showing of a manifest abuse of discretion.' [Citation.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1050.)  " 'A trial court will not be found to have abused its discretion unless it "exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice." ' [Citation.]" (*People v. Lancaster* (2007) 41 Cal.4th 50, 71.)

Defendant makes the following argument as to why the court abused its discretion in shackling him during trial:  "[He was shackled because he] allegedly said that he was going to get violent with his attorney in court that day.  [Citation.]  Yet, when the court asked [defendant] about the alleged statements, he denied making any threatening statements and explained that he merely told the bailiff that he was afraid that trial counsel might do something harmful to him.  [Citation.]  [Defendant] never once exhibited any violent or non-conforming conduct, and he made no threats of violence in court that day or on any previous occasions."  Defendant's argument fails because it depends upon the trial court's acceptance of his version of the facts over the statements of the bailiff, which is contrary to the rules of appellate review.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 342 [appellate court accepts trial court's resolution of disputed facts to the extent they are supported by substantial evidence].)

Here, the bailiff informed the court that during the morning pat-down, defendant had said he was going to "go off on his attorney"; he had thought about it all night and could not control himself; he repeated the threat later in the attorney visiting room; and when informed by the bailiff he would be brought to court shackled, defendant said if he was not shackled there would be violence. At the in camera hearing defendant informed the court that he was "uncomfortable" with his attorney and "some problems might happen." We find nothing arbitrary, capricious, or unreasonable in the court relying on the information provided by the bailiff, a person charged with court security, rather than accepting defendant's assurance that he was not a security risk, particularly when defendant admitted having told the bailiff that he was "uncomfortable" with counsel and if he was not "handcuffed some problems might happen." Accordingly, we reject defendant's contention.

Defendant cites numerous cases where the facts demonstrate a much stronger need for courtroom restraints than do the facts of the present case. For example, defendant cites *People v. Kimball* (1936) 5 Cal.2d 608, 611, wherein the defendant had expressed his intention to escape, threatened to injure or kill witnesses, and secreted a lead pipe on his person that was discovered in the courtroom on the first day of trial. Such cases are of no aid to defendant because they have no logical bearing on whether lesser facts may also give rise to a need for shackling. In other words, the cases cited by defendant do not set a minimum standard for shackling. Defendant also cites *People v. Soukomlane* (2008) 162 Cal.App.4th 214 as an example of conduct that did not justify shackling. However, *Soukomlane* is factually distinguishable because it involved a defendant's rude conduct in the courtroom rather than, as herein, defendant's threats to do violence in the courtroom. The cases cited by defendant are of no aid to him.

5

## II

Defendant contends the trial court prejudicially erred when it failed to give a cautionary instruction, sua sponte, to disregard the physical restraints, which should have no bearing on the determination of defendant's guilt. We reject defendant's claim.

"Under [*People v.*] *Duran* [(1976) 16 Cal.3d 282, 291-292], '[i]n those instances when visible restraints must be imposed the court shall instruct the jury *sua sponte* that such restraints should have no bearing on the determination of the defendant's guilt.' " (*People v. Lopez* (2013) 56 Cal.4th 1028, 1080.) However, as observed by the Supreme Court in *Anderson, supra,* 25 Cal.4th 543, "[W]e have consistently held that courtroom shackling, even if error, was harmless if there is no evidence that the jury saw the restraints, or that the shackles impaired or prejudiced the defendant's right to testify or participate in his defense." (*Id.* at p. 596.)

Defendant fails to point to anything in the appellate record that shows the jury saw his restraints. Instead, defendant asks us to "assume" the jury was aware of the restraints because he wore leg shackles, a waist chain, and was chained to his chair throughout the trial. We decline to make the assumption. For this court to assume a fact not shown by the appellate record violates basic rules of appellate review: " 'Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error.' [Citation.]" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) " 'We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error–it will not be presumed. [Citation.]' [Citations.]" (*People v. Tang* (1997) 54 Cal.App.4th 669, 677.)

Even if the jury was aware of defendant's restraints, the court's error in failing to give the cautionary instruction was harmless beyond a reasonable doubt. Defendant's response to the prosecution's case was that Ellis, Trejo, and Rasmussen should not be believed because they were all homeless and had been drinking large amounts of alcohol

6

that day; Ellis, Trejo, and Rasmussen each had several prior convictions for offenses involving moral turpitude; Ellis failed to give defendant's name to the police when they arrived after he had called 911; and Trejo had a reputation for lying to the police and other homeless people just to start trouble. On appeal, defendant argues that his being visibly shackled gave additional weight to the likelihood that he had committed the violent crime with which he was charged. We are not persuaded.

Defendant never contested that he attacked and stabbed defendant in the neck with the knife. His defense, as argued, was self-defense. Defendant's argument fails to take into account a critical point–that while there was affirmative evidence from Ellis and Trejo that it was defendant who initiated the fight by lunging at Ellis and cutting him with the knife, there was *no evidence whatsoever* that Ellis tried to make any physical contact with defendant prior to defendant's actions in swinging the knife at Ellis. Accordingly, in the absence of any evidence that Ellis was a threat to defendant, there simply was no basis upon which the jury could find a need for self-defense.[2]

In view of the lack of evidence that Ellis physically instigated the assault, coupled with the instructions on the applicability of self-defense and the definition of evidence the jury was to use in determining guilt, any error in failing to give a cautionary instruction regarding defendant's physical restraint was harmless beyond a reasonable doubt.[3]

---

[2] The jury was instructed that for self-defense to apply, defendant must have "reasonably believed" he was in "imminent danger" of suffering bodily injury or of being unlawfully touched; defendant must have "reasonably believed" the use of force was necessary to defend against the danger; and defendant used "no more force than was reasonably necessary" to defend against the danger.

[3] In conjunction with this appeal, defendant has filed a petition for writ of habeas corpus containing a declaration by his trial counsel that defendant's restraints were visible to the jury. If true, the court was required to give, sua sponte, a cautionary instruction directing the jury not to consider defendant's restraints as evidence in the case. Nonetheless, we have determined that any such error was harmless beyond a reasonable doubt. We have

**DISPOSITION**

The judgment is affirmed.

                                                               RAYE               , P. J.

We concur:

      NICHOLSON       , J.

      HOCH            , J.

---

therefore denied the petition for writ of habeas corpus. (*In re Gueyger* (Aug. 19, 2014, C074289) [petn. den. by order].)